for arguing on the American Civil War in the U.S.S.I. Are you ready? Yes. Good morning, your honors. May it please the court, my name is Kevin Schad, appearing for the appellant John Cook. I'd like to reserve four of my minutes for rebuttal, if I may. Thank you. Your honors, I'd like to focus this morning on the sentencing issues, which I raised in my brief, and then I would leave the balance of the issues to the briefs that were filed, unless there are any specific questions. And I think I need to start out the sentencing issues by addressing the issue of which guidelines manual should have been used to sentence Mr. Cook. And I think it's clear, and I think it's clear from a U.S. Supreme Court case that came out after this case, that in Pew v. United States, the correct guidelines manual that should have been used in this case was the 2008 guidelines manual. If we assume an appropriate cross-reference to the murder guideline and the aggravating circumstances, doesn't the sentence come out the same under either guideline? I would submit that the sentence doesn't necessarily come out the same for two reasons. First, and by the way, as an aside, I do contest the cross-reference to the murder guideline, but in this case, the judge appeared to have provided for a downward variance in this case. Because if you take into account the cross-reference that was used, I believe the government said that with the cross-reference and then the four-point level enhancement for the leadership role, he was sitting at a base offense level 47-3, which would give you guidelines range of life, not 360 to life, but life. The court in this case gave a sentence, an effective sentence of 314 months in this case, which represents a downward variance in the guidelines. One would assume that the sentencing judge in this case would have at least considered what the guidelines would be absent the cross-reference, because they had a lot of discussion at the sentencing hearing about those other guidelines and those other enhancements regardless of the cross-reference in this case. So the district judge in this case would have and could have and should have under 3553A factors considered the effect that those other guidelines would have had in this case. And therefore, and in this case, it makes a significant difference because his guidelines under the correct version of the guidelines, I believe, go down to 210 to 262 months. But only if you don't do the cross-reference? Only if you don't do the cross-reference. So if you assumed the propriety of the cross-reference, aren't the applicable guideline ranges exactly the same? If you assume the cross-reference and you assume that he found first-degree as opposed to second-degree murder, which the cross-reference allows either and there doesn't appear to be any discussion whatsoever, in the 2008 guidelines, he could have cross-referenced first-degree murder or second-degree murder. We're talking 2007 versus 2011? Yes, that's correct. That's correct. And there wasn't. It was just, I think, an assumption that it went to 43 and then 47 to life for first-degree. And so at the very minimum, the court should at least have a remand and say, okay, even if the cross-reference applies, maybe I should consider first versus second-degree and see how that applies and then also take a look at what are the guidelines. Because you see cases all the time where courts take a look at, okay, well, the career offender applies. This is just a hypothetical. The career offender applies. However, if he wasn't a career offender, his guidelines would have been 92 to 110. So I'm going to go somewhere in between here because I recognize that and I recognize that the career offender applies and I'm going to make this determination. The court could have done that. Mr. Shad, I always enjoy your arguments, but let's just stop with the obvious for just a second. You're quibbling about first-degree, second-degree, right? Yes. And the question there is premeditation. Yes. Your guy orders his gang members to go out and kill somebody, and it just happens that the person or one of the associates gets killed in a car rather than getting killed at the other competing drug house. Under what stretch of imagination would that not be first-degree murder? Well, two, two reasons. Number one, that was put before a jury and he was acquitted of that conduct. So we had a jury of 12 listen to that evidence and find that he was not guilty of committing that conduct in any event whatsoever. Using a higher standard of proof. Using a higher standard of proof. So we have that. Second, we have a lack of findings at the sentencing hearing which would support this cross-reference in the first place. The judge says, well, I find by a preponderance of the evidence and I find beyond a preponderance of the evidence that he committed, he was involved in this killing. And I do admit that the record says that. But there's no analysis of what facts the judge was relying on to get to that cross-reference. And that gets to my issue that I raised in my brief with regards to War X. And War X is a case that came out after the White case and talks about the use of acquitted conduct when it's used to enhance a sentence. And so the standard is you have to find by preponderance of the evidence, if you're a district court judge, that the acquitted conduct actually occurred. And so the court in this case at sentencing said those magic words. But you'll find that if you review the sentencing hearing transcript, there's a lack of actual findings to say, okay, well, I find that the only person that testified about this matter was Mr. Newsom. Hold on just a minute. Yes. The court says, quote, that this defendant ordered Mr. Newman and the others to go and shoot up that house and kill whoever was in it. Yes. What more of a finding do you need than that? Well, he did not make any findings with regards to Mr. Newman's credibility. And Mr. Newman was the only person that testified about this crime. There's only the only real substantive evidence. Just prior to that, the court says, this court in looking at the cross-reference has no difficulty whatsoever by a preponderance of the evidence, truly by much more than that. But I believe the standard would still be the preponderance that this defendant ordered Mr. Newman and the others. Absolutely. You can't get much more clear than that, can you? And I admit that he made those findings that it was a preponderance of the evidence, but there are a lack of findings that really support that Mr. Newman was a credible witness in this case. Okay. Going on. It is absurd, absolutely absurd, to think that this was not the result of Mr. Cook getting these individuals to go and do this. And it is confirmed by the fact that he paid for this. He told them about burning up the car. And that is directly contrary to the jury's findings in this case. Right. And if you go back a little bit further in the sentencing transcript, they have a discussion about the findings of fact with regards to the amount of drugs involved in the offense. And the prosecutor in this case tried to argue, even though there was a factual finding by the jury that the amount of drugs was no more than 279 grams, the government argued at sentencing that it was in the thousands of grams in this case. And you'll notice in that case, as to that issue, the judge says, I have to honor the jury's verdict in that, so I'm not going to go above 279 grams. So the court says, when the jury speaks as to this issue, I'm going to honor the jury's verdict in this case. However, when it gets to the issue of intentional killing, where the jury has again made the same finding under the same standard, the judge belies that, doesn't make any findings about Mr. Newsom's credibility, and just says, you know, I find that all these things happened, even though the jury did not. And so... But in one point you're arguing he didn't make the findings. Now you're arguing, well, he did make the findings, but it's inconsistent with his treatment of the jury's findings on drug quantity. Well, and it is twofold. I understand what the court said in that abbreviated sentence. And if that is enough to enhance a defendant's sentence for acquitted conduct and dramatically increase his sentence, then this court will make that finding that that one sentence is enough. But we have one sentence that says, I'm using a preponderance of the evidence standard, and we have one sentence that says that basically the jury's absurd, I guess, is what the court's saying there, and then one sentence that says, here's what he did. I only read you two. There are actually several others. There's three. Yeah, there's at least three. There is at least three. But even if the cross-reference applies, and again, we submit that the cross-reference doesn't apply, but there has to be, the judge has to, and there's a case that I gave to opposing counsel because I just found it yesterday, but it is Huff v. United States. It came out in November of this year, and it actually deals with ineffective assistance of counsel. Did you give that to us? No, I just found it yesterday. I can put it in a 28J. Do you want us to look at it? Yes. Tell us the site. Do you have the site? I do not have the site with me. Do you have the site of what he gave you? I do. All right, just give it to us when it's your turn. But in that case, which was an ineffective assistance of counsel case, the court discussed the issue of this pew and the ex post facto, and so the issue was in that case, well, even if this ex post facto applies, the defendant in this case received a lower sentence, and that lower sentence was within what would be the guidelines range had the correct guidelines range been used, had there been no ex post facto problem. And this court in that case specifically said, that doesn't matter because use of the guidelines range is, in and of itself, procedurally unreasonable, and we don't know what the court would have done had the court had the correct range in front of it, and therefore we're going to remand. And in that case, the court remanded for an evidentiary hearing in that case on the issue of the ineffective assistance of counsel. So I would submit that even if the cross-reference in this case is accurate, if this court finds that the murder cross-reference is accurate, that doesn't mean that the court would not have considered the other guidelines range. As a matter of fact, again, district courts do that all of the time, and it should be a factor that the court should have been able to consider. And in this case, the court did consider something because we have a sentence of 314 months here. Did either the pre-sentence report or the various briefs that were submitted by the parties discuss what the proper guideline range would be in your estimation had the cross-reference not applied? I don't think I calculated what the guidelines range should be. I have it. If you accept... You represented this guy below? No. So I'm asking, did the attorneys below that were at sentencing, they didn't advocate the lower guideline range without use of the cross-reference? Actually, here's the other small problem with my case, which is that the court below, the defense counsel at first conceded that the 2011 guidelines range was the correct one to use. So this is a little bit of an issue. But... I thought we might get to that at some point. I don't know. So in any event, that doesn't bar me for two reasons. Number one, Pugh came out after the sentencing in this case, and he didn't foresee Pugh. I can rely on Pugh because, at the very least, I can argue that it's new law that's applicable on direct review to my client, even if he did waive it. But in that case, if I understand what you're saying, there was a dispute about the accuracy of the guideline range. Here, assuming that the cross-reference was proper, there's really no dispute about the guideline range. Now, you may dispute about how far outside of the range the judge goes, but there's really no dispute about the guideline range. If the cross-reference applies, there was no dispute in the court below once you got to that point. That is correct. And we have a case where, if there's no dispute about the guideline range, the judge, for whatever reason, ignored that range and imposed a sentence. Is that right? That's correct, yes. And in imposing a sentence, we have to assume that the judge followed the 3553 factors. We can assume that if the record's developed enough to allow appellate review on that issue. Here, again, I'm a little confused as to how the court got to... What other statutory authority is there, then, for the judge to impose a sentence different from the guideline? Had to have used 3553A factors. The judge had to have used 3553. And what 3553 says is the judge has a responsibility to impose a sentence that effectuates all of the 3553A factors, but is no greater than necessary to do so. So the judge, presumably, looked at the guideline range and then decided, in the whole universe of things, that this would be the appropriate sentence. That is correct. And if I could just respond to that... So if that is correct, the judge is deciding what the appropriate sentence is. Even if the guideline had been somewhat different, that still would have been the sentence because that's the appropriate sentence the judge determined based upon the entire universe. However, this court's case law is very clear that in order to have effective appellate review, there has to be something on the record that this court can review to see how the judge got to there. And that's kind of the issue here. If the court did utilize the guidelines but for the cross-enhancement, which we don't know whether he did or did not in this case, but if he did, then we know that those are wrong because of the ex post facto issue. Thank you. All right. You'll have your rebuttal. Do you have that cited for us? I do. 734, Fed Third, 600. Thank you. And good morning. May it please the court, Regina McCullough, appearing on behalf of the United States. I think it's important to note that we must start with waiver in this case, Your Honors. Mr. Malkoff did agree that the 2011 version should be used. And once he agreed to that, the defendant has waived this argument. U.S. v. Abko-Centino, the defendant cannot agree in open court with the judge's proposed course of conduct and then charge the court with error for following the course of conduct in which he agreed to. And in this case, he did agree to the 2011 version of the guidelines. Secondly, that was the correct version of the guidelines. The guidelines clearly state at the time of sentencing, you must use the guidelines in effect unless using the guidelines with respect to the date of the offense would create an ex post facto violation. What about your opposing counsel's argument that it must, because there is an issue of whether you can accept the aggravation and the cross-reference, and if you in fact decided that the cross-reference was not appropriate, would you concede that there was an ex post facto problem? If the cross-reference is not applicable, we will have to concede that issue. But in this case, the cross-reference is applicable. I think the court found by a preponderance, and this circuit has hailed that you can find by a preponderance of the evidence that relevant conduct is applicable and thus apply the cross-reference. In this case, counsel's a little off, the judge did find there was testimony from three, excuse me, four people plus the officers. Mr. Newman testified, Ms. Woody testified, and Ms. Chapman all testified about the homicide. The government found a 25-page sentencing memorandum outlining the extensive nature of the testimony with respect to the cross-reference and relied on their briefs at that time. Yes, there was not extensive discussion about the cross-reference, but there was a 25-page sentencing memorandum. And the court, she sat through the entire trial. She heard the testimony. She was aware that Mr. Cook did order this homicide. He ordered his henchmen to go to that house and shoot those people. Those people got into a car, and those henchmen followed out Mr. Cook's orders. He paid the individuals for it. Ms. Chapman testified that she overheard him order Deshawn Carter to burn the vehicle, which he had provided for the homicide. The court clearly found by a preponderance that the cross-reference was applicable in this case, and it was applied. So under the guidelines, as long as there is not a difference in the sentencing, then you use the 2011 version, and the court correctly used that version. Did one of the versions have a second-degree homicide? Both versions have a second-degree homicide, the 2011 as well as the 2007. They both have the ability to go to the second degree if the court determines that second degree is applicable. In this case, the court clearly determined that first-degree murder was applicable. The defendant was responsible for the homicide of Christopher Sewell, and thus she held him accountable for that under the 2A1.1. In addition, as I indicated, the evidence showed Cook totally responsible. I think the other thing that the court was asking defense counsel about is how the guidelines would be different. Under the 2011 version, if it didn't apply, it would be 360 to life. Under the 2007 version, under Lasefield, the defendant argues that he would be given the benefit of the new drug guideline. Well, as the court is aware, there is a one-book rule, and under that one-book rule, under the 2007 version, the guideline range would be 292 to 365. He would not be allowed the benefit of the new crack guidelines. He would then have to go back and petition the court for that. With respect to the Huff case, I don't think it's applicable here. I don't think that belies the waiver. In that case, as the court has already noted, the defendant strenuously objected, timely and contemporaneously, with the use of the 2009 version. Here, there was no objection. There was actually agreement that the 2011 version should be used. The guidelines and Booker indicate that the court has to start off making an accurate calculation of the guidelines. And in this case, Judge Botani did that. She meticulously went through each and every enhancement of the guidelines and calculated them. And then she came to the cross-reference and determined that applied. Then she applied the 3553A factors. Specifically, she said, the court has to look at a number of factors in determining your sentence. One is the nature and circumstances of the offense, the defendant's background, his age. Clearly, she relied on the 3553A factors in imposing her sentence. And that sentence was 314 months, and it was applicable. On this waiver issue, I'm assuming there's a manifest injustice standard in there, isn't there? Yes. Although, so far, we haven't heard from Mr. Shadd on what that would be. No, we haven't. So there is a way around the waiver, arguably. Arguably, there's a way around the waiver. But in this particular case, Your Honors, I believe the waiver applies. And then, I'm not sure I've got this right, and Mr. Shadd can correct this or disavow this if I've got this wrong, but he seemed to be suggesting that even if the cross-reference is right, the district judge had to have calculated what the guideline range would be without the cross-reference and then taken that into consideration in the exercise of her discretion in determining and fashioning the sentence in this case. I think that's what he said. I think so, too, in that, obviously, she came to the guideline range of 360, 30 years, which was the bottom of the 2011 version. I don't think that that's the number she came to. I don't think she picked 360 because it was the bottom of the sentencing guideline range. I think she started at life, and that's where she started. This is life. And based on the 3553A factors, she ended at 360 and then gave him for credit for the time he had served in the state. I don't think there's nothing in the record that indicates she went to the 360 number because it was the bottom of the 2011 guideline version. Well, again, back to his argument, is there any authority you're aware of that would indicate that you have to do this alternative calculation and then state in the record how you are or aren't taking that into account in connection with your decision based on the correct calculation? I'm sorry, Your Honor. Somebody was sneezing, and I missed your question. I apologize. I didn't hear it all. It's a brilliant question, and I don't know if I can say it again. Is there any authority you're aware of that says that once you've done the correct calculation, you then have to do an alternative calculation and explain to us how you took that into account or didn't take it into account in connection with the sentence you imposed based on the correct calculation? No. I don't know of any authority that says that, if I understand your question, in that you take the correct calculation, then you take the alternative calculation under the 2007? Is that what you're asking? I think that's what we agreed he was arguing, wasn't it? Mr. Shedd? Right. Didn't you and I agree that's what we both thought he was arguing?  Okay. We agreed that that's what we thought he was arguing, but I don't know of any case law that says you have to do that. I think once you determine the applicable guideline range, and all parties in that courtroom agreed to it, probation department, the judge, especially and most importantly, the defendant. And so now he has waived his argument. I have a question on the convictions issues raised about this evidence that was placed in on the defendant beating his girlfriend, Kiki Rivers. Yes. I'm struggling to see any connection with his abusiveness of her to the proof of the conspiracy, use of that violence to keep his people in line, so to speak. I don't see anything in the record. What makes the provision of that evidence appropriate? I think that evidence is appropriate because the defendant was charged with conspiracy as well as a CCE. And in particular, the government had to establish that this was his organization and he was responsible for running it and that he was over these individuals, that being Mr. Newman, Mr. Carter, all co-defendants, Ms. Rivers, also a co-defendant, and Ms. Woody. That testimony came in at the time of the beating. Mr. Newman and Ms. Woody was present. If the court will look at the record, Ms. Woody testified that she believed the beating was because Kiana Rivers was copying dope from another person, and when asked specifically why she didn't intervene and stop it, Woody testified that she didn't want the same beating. It was important to show that Mr. Cook ruled his organization by any means necessary, and he used violence not only with other members in this community, tribal drug dealers, but also to keep his co-conspirators, his henchmen, his workers in line. Even though she testified that she had no idea why he beat her that way? In looking at the record, it was just a moment, and I should have followed up on that question and really pulled that answer out of her, and I take full responsibility for that. But Ms. Woody did testify that she was beaten because she believed Ms. Rivers was trying to get dope from someone else, and Mr. Cook says, You only get your dope from me, and you only sell for me, and you only work for me, and if you don't, I will beat you. And so that was important testimony. In closing argument, we argued about the violence, and it was important to come in. In closing argument, can you address the disregard your duty statement? I'm sorry? Can you address the statement regarding disregard the duty of defense counsel, or the effect or the goal of defense counsel is to have you disregard your duty? Yes, I will address that. Again, inartfully stated. But at that time, the government was responding to six different arguments, excuse me, five different arguments from five different defense attorneys. So in doing that, we were responding to several statements. It was not flagrant. It was an isolated incident. It was two statements, and it didn't mean that it was, quote-unquote, their duty to distract. It was some of the things they said were not evidence and were a distraction, in that the government did say that. But the government has given wide latitude, Your Honor. It was permissible, although inartful. And we don't believe that it was intended to mislead the jury. It was isolated. It was not deliberate, and in no way prejudiced the jury. The government was responding to things that the prosecution may forget certain facts to bolster their case, page ID 3617. The government has a hypothesis, and they just sought out witnesses to support that hypothesis, page ID 3621. It's hard for the jurors from the suburbs to pass judgment on people who live differently from you, page ID 3647. So in responding to those things, the government just meant that those were things that were not in evidence. And, again, it was inartfully stated, but in no way prejudiced the defendant, and it was not flagrant. Ms. McCullough, I'd like to follow up on your answer that you gave two questions ago regarding the evidence of the beatings. I thought that the position was because the indictment alleges that it was further a part of the manner and means of this unlawful conspiracy that John Cook and members of the conspiracy used violence, including murder and threats of violence, to maintain their position in the conspiracy and to intimidate and eliminate rival drug traffickers. I thought the argument was that that evidence came in to support this allegation in the indictment. It did. It came in under both theories, CCE as well as the conspiracy. So the government stands by that, that it came in under both theories. Any further? If there's no further questions, in conclusion... Surely there are no other questions? In conclusion, the government would just ask that you affirm the convictions and the sentence in this case. Thank you. Thank you. Your Honors, there are three brief points I'd like to make. First, in response to Judge McKeague's question, I don't contend that a court, a district court, must necessarily make that alternative finding. I don't think that there's any case law to support that requirement. But in this case, there was a variance, admittedly a variance in this case, and there's obviously speculation as to what that variance is based upon because we can't even find in the record where the court made the finding, okay, the guidelines here are life, and I'm going down to 360 for this reason, and then I'm going down to... I'm sorry, I thought there was some discussion. Am I making this up? Some discussion of his age. There was. He was, what, 23, and the judge was indicating, you know, I'm sending you to prison, but I want to give you some hope that you would at some point in your life be able to be a free man again. Absolutely. The court did make that finding and talked about other 3553 findings but then didn't tie them to how the court got to 360. And we don't, you know, if you accept that the court's discussion of the age gets us to 360, then you also must equally accept all of the court's discussion about the guidelines calculations, the alternative guidelines calculations of which there were pages and pages and pages of discussions about that. That's equally as viable a reason on the record. And so that's my point there. With regards to the issue... Before you leave that one, I think you raised at least an interesting argument. In the beginning of guideline sentencing, the guidelines in the courts seemed to say if you're going to depart, you have to go through and articulate on the record every single upper or lower guideline and why you're rejecting that one and accepting the next one. And then everybody just threw up their hands on that. That was completely unworkable. So that sort of went by the wayside. Is there any suggestion in the case law that you're aware of when you're doing a variance that you have to say more than this particular judge did as to exactly which of the 3553A factors and how much weight they were given or is it sort of a jumble? It's a package of things that produces a result at the end. The case that comes to mind is actually the two cases of the Bisline case where this court's overturned the sentence twice now on a child pornography case based upon inappropriate or lack of correct 3553 findings. And the first time through... But isn't that going from multiple, multiple years to one day or something? It was. But the analysis is the same, which is whether or not there's a sufficient appellate record for us to determine how the district court got under 3553 to where they got to. And so whether it's a day or whether it's a hundred years, the analysis is still the same. I thought there was case law that said, and I think the Supreme Court may have even mentioned this, that the further away you go from the guidelines, the greater the explanation has to be. So if you're going from 120 months to one day, that would seem to me to require a great explanation. Going from 120 months to 110 months, that would seem to suggest a lesser explanation. Is there a case law like that? Well, in this case, we're going from life to 314 months. I don't know exactly how great of a chasm that is, but it seems to be a fairly big chasm to me. So it would be that much of a variance in this case. Turning to the issues of why this court should even consider this, and it's not waived. Again, I cited to the Pew case, which is an intervening case, which I think gets me over the hump. But over in that, if you take a look at the sentencing hearing transcript, after the defense counsel concedes that the 2011 guidelines are used, he then goes on, and I see my time's up, if I can just finish this thought. He then goes on to challenge the two-point enhancement for maintaining a drug premises, and he challenges it on ex post facto grounds that this is an ex post facto because of the 2011 guidelines. And that's after he concedes it. Confusing, but I think it maybe helps me get over the hump of he really didn't concede it if he's making that argument. And the court obviously denies the ex post facto on that basis. And it's important because I disagree with counsel. Counsel says that you can only use one or the other and that you can't mix and match. Well, if you use the 2007 guidelines manual, 1B1.10 says you can also use any guidelines that were explicitly made retroactive, which the new crack cocaine amendments are. And so it still can be used in the 2007 and imported. One book rule doesn't apply in that instance. Thank you. Thank you, Mr. Shadd. Thank you, Ms. McCullough. The case will be submitted. Please call the next case. Thank you.